# United States District Court

DISTRICT OF _ALASKA_

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

Goose Creek Shingle and Shake
and
Residence of Jack Harrison

## APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT

CASE NUMBER: Forest Service Case no. 01-10-T-0002

I _Jack A. Davis_ being duly sworn depose and say:

I am a(n) _Criminal Investigator with the U.S.D.A. Forest Service_ and have reason to believe
Official Title

that ☐ on the person of or ☒ on the premises known as (name, description and/or location)

See Attachment

in the _____ District of _Alaska_
there is now concealed a certain person or property, namely (describe the person or property)
financial records, check book registers, cancelled checks, reciept books, business records relating to the sale or business transactions between Goose Creek Shingle and Shake or Jack Harrison and Bill Walker, Calvin Yerkey, or Mike Smith. Also telephone records.

which is (give alleged grounds for search and seizure under Rule 41(b) of the Federal Rules of Criminal Procedure)
property that constitues evidence of the commission of a criminal offense

in violation of Title _18_ United States Code, Section(s) _641 & 371_
The facts to support the issuance of a Search Warrant are as follows:

See attached Affidavit

Continued on the attached sheet and made a part hereof.    ☐ Yes   ☐ No

_____
Signature of Affiant

Sworn to before me, and subscribed in my presence

_____   at   _____
Date                                    City and State

Attachment to the Application and Affidavit for Search Warrant for the Goose Creek Shingle and Shake Mill and the Residence of Jack Harrison:

On the premises known as: the Goose Creek Shingle and Shake Mill and the Jack Harrison residence located adjacent to the mill on the same property. You access the property by driving from Thorne Bay, Alaska west on Forest Highway 42, then turn onto the Goose Creek Road and travel approximately .3 of a mile and take the left hand fork in the road, then drive past the Thorne Bay Dump, approximately .1 of a mile, and enter the driveway to the right. The property contains a 2 story covered cedar mill and associated outbuildings and Mr. Jack Harrison's residence is a board and batten house with a red roof adjacent to the mill.

# AFFIDAVIT FOR SEARCH WARRANT

Forest Service Case No. 01-10-T-0002

Affidavit of Jack A. Davis
Special Agent
U.S.D.A. Forest Service
Ketchikan, Alaska

1. I, Jack A. Davis, am employed by the United States Department of Agriculture, Forest Service as a Criminal Investigator (Special Agent). I have been employed as such since 1986. In this capacity I conduct criminal investigations in matters that concern the National Forest.

2. I am currently stationed on the Tongass National Forest with my office located in Ketchikan, Alaska and have been stationed here since August of 1995.

3. My primary area of responsibility for National Forest land ranges from the International Border between the United States and Canada near Prince Rupert, B.C. to Petersburg, Alaska. This area includes all the National Forest lands on the Prince of Wales Island.

4. During these 15 years as a Criminal Investigator I have applied for and received numerous search warrants and also served them in criminal cases, some of which involved the theft of National Forest timber.

5. It is within this capacity I received the following information:

   a) On January 5, 2001 Richard Blauvelt, the owner of a cedar mill located in the Goose Creek Industrial subdivision near Thorne Bay, Alaska informed U.S.D.A. Forest Service Timber Management personnel that someone was selling stolen red cedar shingle wood blocks to a shake and shingle mill in the subdivision during the week of January 1 to 4, 2001. Mr. Blauvelt also stated that the individuals selling the blocks lived in Naukati, Alaska.

   b) On January 5, 2001, Forest Service Law Enforcement Officer (LEO) Paul Kain received the information that Mr. Blauvelt had given to the Forest Service Timber Personnel. He contacted Mr. Jack Harrison, owner of the Goose Creek Shake and Shingle Mill whose mill is located in the Goose Creek Industrial subdivision approximately .1 of a mile down the Goose Creek road past the Thorne Bay dump. Mr. Harrison told Officer Kain he had purchased 4 cords of shingle blocks from Mike Smith and Calvin Yerkey on January 2nd and 3rd, 2001. Mr. Harrison told LEO Kain that the two individuals delivered the wood in a dark colored pick-up truck and that he gave them an advanced payment of $600. He advised the wood was red cedar and that he had not asked them where they had obtained the wood. He also told LEO Kain that both Mr. Smith and Mr. Yerkey were from Naukati, Alaska. He advised LEO Kain that he believed the value of all the wood was approximately $900. Mr. Harrison

1

showed LEO Kain the wood blocks that had been delivered by Mr. Smith and Mr. Yerkey. LEO Kain photographed the blocks.

c) On January 5, 2001, LEO Kain was discussing the discovery of the apparent stolen wood blocks with U.S.D.A. Forest Service Law Enforcement Officer Clint McGuffey. LEO McGuffey informed LEO Kain that he had just received a report from a Forest Service employee about a cedar theft site near Naukati, Alaska. LEO McGuffey stated the employee told him that the theft site was located on Forest Development Road No. 2057 at about milepost 1.75. This road is in the Naukati, Alaska area and the Forest Service person stated there were two green red cedar trees that had been apparently cut into bolts illegally on National Forest land.

d) On January 5, 2001, LEO Kain drove to the reported site of the timber theft on Forest Development Road No. 2057 at approximately milepost 1.75. There he found two green cedar trees that had been freshly cut on National Forest land. One of the trees was 38 inches in diameter and the second one was 25 inches in diameter. Both trees were green. Evidence at the site indicated that the trees had been dragged whole length up the road and then processed into 16-inch shingle bolt material. At the site LEO Kain found where there was one set of tire ruts left apparently by the persons responsible for the theft. He measured the distances of the inside and outside wheelbases of the impressions left in the roadway. He also made measurements of the wood and noticed saw marks on the remaining wood.

e) On January 6, 2001, LEO Kain returned to the Goose Creek Shake and Shingle Mill with LEO McGuffey. There Mr. Jack Harrison, the owner of the mill, signed a Consent to Search form allowing the officers to seize the allegedly stolen cedar products. The officers then seized the wood identified by Mr. Jack Harrison as the wood delivered by Mr. Mike Smith and Mr. Calvin Yerkey which LEO Kain had observed the previous day. While they were doing this they noticed what appeared to be flecks of metallic blue paint adhering to some of the shingle bolts. The officers stored this evidence on the Thorne Bay Ranger District compound.

f) On January 6, 2001, LEO McGuffey returned to the cedar theft site on U.S. Forest Service Road No. 2057 and recovered a core from the cedar tree where the outside wood had been split off to make a shingle bolt. The shingle bolt material had been taken by the person(s) responsible for the thefts. LEO McGuffey then compared the core and it's specific markings to a shingle bolt that had been delivered to Mr. Harrison's mill by Mr. Yerkey and Mr. Smith and had been seized by the LEO's earlier in the day. The unique markings on the shingle bolt matched unique markings on the cedar core.

g) On January 9, 2001, LEO McGuffey drove to Naukati, Alaska and located where Mr. Michael Smith and Mr. Calvin Yerkey were currently living. He received this information from individuals that were residents in the Naukati community and knew Mr. Michael Smith and Mr. Calvin Yerkey personally. From these inquiries he found that Mr. Michael Smith was currently living in a residence in the Naukati West

2

subdivision located .45 miles from the local convenience store, the Naukati Connection, along the main road on the left (east) side of the road. The residence driveway is the second driveway on the left (east) side of the road past the Naukati Connection. LEO McGuffey learned that Mr. Smith lives with his mother at this residence. He also learned that Mr. Calvin Yerkey lives in a cream and brown colored travel trailer in the yard at the same residence. LEO Mc Guffey personally observed this cream and brown colored travel trailer parked next to the residence where Mr. Michael Smith and his mother, Betsy Smith live. LEO Mc Guffey also learned through a records check that Mr. Yerkey owns a blue Chevrolet pick-up truck with Alaska license no. 8350 DS. LEO McGuffey had previously, within the last week, observed Mr. Yerkey driving a metallic blue Chevrolet pick-up truck with Alaska license no. 8350 DS and also observed Mr. Smith driving a red Chevrolet pick-up truck while in the Naukati area. LEO McGuffey personally knows Mr. Yerkey because of a previous law enforcement incident where LEO McGuffey issued Mr. Yerkey a citation. LEO McGuffey also personally knows Mr. Smith because he used to live in the Naukati community and had observed Mr. Smith on various occasions.

h) LEO's Kain and McGuffey researched the records of the U.S. Forest Service and did not find a permit that would allow Mr. Calvin Yerkey or Mr. Michael Smith to legally cut green cedar trees on National Forest land.

i) U.S.D.A. Forest Service Special Agent Jack A. Davis obtained Mr. Calvin Yerkey's and Mr. Michael Smith's basic persons information and criminal history from the Alaska State Troopers Dispatch Center in Ketchikan, Alaska. He discovered that Mr. Yerkey listed his occupation as a sawmill worker. He also discovered that Mr. Smith listed his occupation as a sawyer.

j) On January 16, 2001, Agent Davis, LEO's McGuffey, Kain, and Jeff Odom and Alaska State Trooper Bob Klaus served a State of Alaska search warrant on the Smith and Yerkey residences in Naukati, Alaska. They seized chain saws believed to have been utilized in the theft of the cedar shingle bolts on National Forest land.

k) On January 16, 2001, Agent Davis and LEO's McGuffey, Kain, and Jeff Odom found another cedar theft site on Forest Service Road No. 2057 approximately 1 ½ mile from the site located on January 5 by LEO Kain. At this new site one green cedar tree had been cut down, dragged down the road, and cut into shingle shake bolts. Most of the tree had been removed. It appeared to have similar methods as the previous site and was possibly performed by the same people.

l) On January 30, 2001, LEO's McGuffey and Kain interviewed Mr. Calvin Yerkey at Mr. Yerkey's request. Mr. Yerkey told them that he had cut the green trees on Forest Service Road No. 2057 at both sites. He stated Bill Walker of Naukati, Alaska, directed him to the site. He stated Mr. Walker told him that he had a permit for the trees. He stated Mr. Walker, Mike Smith, and Kirk Loud was with him when he cut the trees under Mr. Walker's direction. He stated Mr. Walker would split the cedar rounds into shingle bolt sections with a maul and furrow that Mr. Walker had. He

3

stated Mr. Walker also utilized a saw that Mr. Walker had brought with him. He stated he believed the saw was a Huskyvarna. Mr. Yerkey stated that Mr. Smith, Mr. Walker, and himself were the ones that cut and processed the cedar trees. He stated that Mr. Kirk Loud did not do any of the work and was just along for the ride. Mr. Yerkey further stated that Mr. Smith, Mr. Walker, and himself each took a load of the cedar shingle bolts, in their respective pick-up trucks, to the Jack Harrison's mill in Thorne Bay, Alaska. He stated this was performed under instructions from Mr. Walker. Mr. Yerkey stated that he and Mr. Smith each received checks from Mr. Harrison for $200. Mr. Yerkey stated he also took one more load to Mr. Harrison's mill. He stated he performed these acts sometime in December, 2000 before Christmas. He stated he believes Mr. Walker was paid also and that Mr. Walker had previously arranged the sale with Mr. Harrison. Mr. Yerkey stated he had never been to Mr. Harrison's mill prior to this incident. Mr. Yerkey stated that Mr. Walker told him that if there is any problem to have them come talk to him.

m) On January 31, 2001, Agent Davis performed a telephone interview of Mr. Yerkey. They went over the information that Mr. Yerkey had given LEO's Kain and McGuffey the previous day. Mr. Yerkey told Agent Davis that after they had served the search warrant on Mr. Smith's and his residence that he went and talked to Mr. Walker about it. Mr. Walker told him not to bring his name into it. Mr. Yerkey also told Agent Davis that he has seen Mr. Walker's residence and that Mr. Walker keeps his wood working tools there. He also stated that Mr. Walker's vehicle is a white Ford pick-up with a light blue strip around the side and back. Mr. Yerkey also reiterated that he thought that Mr. Walker and Mr. Harrison, the mill owner, had the purchase of the cedar previously arranged. He stated that when they delivered their loads to Mr. Harrison's mill the first time, Mr. Smith had walked up to Mr. Harrison and said they were here with Mr. Walker's wood. It seemed that Mr. Harrison knew what Mr. Smith was talking about. Mr. Yerkey also stated that he believes Mr. Walker owns some firearms.

n) Agent Davis personally knows Mr. Jack Harrison and the location of his mill site near Thorne Bay, Alaska. On February 24, 1998, Agent Davis took a sworn Affidavit from Mr. Harrison and obtained copies of checks from him concerning another cedar theft from National Forest land. Mr. Harrison had purchased this cedar wood from the individual who was ultimately convicted of theft of government property.

o) Agent Davis obtained Mr. Bill Walker's basic persons information and criminal history from the Alaska State Trooper's Dispatch Center in Ketchikan, Alaska. He discovered that Mr. Walker listed his occupation as a retired logger.

p) On January 31, 2001, LEO Kain drove to Naukati, Alaska. There he located Mr. Bill Walker's residence. It is approximately .2 of a mile traveling south on the main road from the Naukati Connection Store, then you turn right on the first road and travel .1 of a mile. Mr. Walker's residence is just west of the Ralph Porter residence and mill site. LEO Kain took a picture of Mr. Walker's residence (see attachment A) and also noticed Mr. Walker's Ford pick-up truck in the driveway.

4

6. Agent Davis has conducted numerous investigations regarding timber theft and has executed numerous search warrants to obtain evidence regarding those criminal violations of timber theft. He has found that persons involved in these types of criminal activities commonly keep their tools of their trades (chainsaws, wedges, furrows, receipts, etc.) in their vehicles, residences, and outbuildings or garages to which they have access. He has also found that they commonly communicate with buyers of their illegally obtained product by telephone, often times long distance dialing. He has also found that the mill owners that buy this product commonly keep financial records that show these transactions, such as check registers, cancelled checks, receipt books, and others. He has also found the mill owners commonly keep these records at their mills, mill offices, or residences.

7. According to Title 18 United States Code section 641, the theft of any property of the United States Government less than $1,000 in value is a Class A Misdemeanor. Also according to Title 18 United States Code section 371, if two or more persons conspire to commit any offense against the United States, it constitutes a violation. If the offense is a Misdemeanor, then the individuals involved in the conspiracy are also guilty of Misdemeanors.

8. According to the Alaska State Criminal Code, Section 11.46.130, if a person commits the crime of theft and the value of the property or services is $500 or more but less than $25,000, then the punishment is a class C felony.

9. It is my experience as a Criminal Investigator who has conducted numerous criminal investigations involving timber theft, that the above listed information constitutes probable cause to believe that at the residence of Mr. Bill Walker located .2 miles south of the Naukati Connection on the main road and then .1 mile down the first right hand road to the driveway where a wooden house with a blue metal roof is located (see attachment A) next to Ralph Porter's residence and mill site, all of which is described on the Search Warrant, contains valuable evidence in a crime against the United States of America.

10. It is also my experience as a Criminal Investigator that has conducted several criminal investigations involving timber theft, that the person illegally taking the timber will conspire with mill owner in order to sell his product. This communication is performed by both in-person meetings and telephone calls between the two individuals. The financial records of the mill and the telephone records of the mill and the selling individual contain valuable evidence in a crime against the United States of America. It is my belief that the financial records and telephone records located at the Goose Creek Shingle and Shake mill owned by Mr. Jack Harrison contains this evidence.

5

FURTHER YOUR AFFIANT SAYETH NAUGHT

_____
Jack A. Davis
Special Agent
United States Forest Service
Law Enforcement and Investigations

SUBSCRIBED AND SWORN TO before me this 2nd day of February, 2001 at Ketchikan, Alaska

_____
United States Magistrate Judge

Photo Attachment A

6

Attachment A

PHOTO OF MR. BILL WALKER'S RESIDENCE AND VEHICLE NEAR NAUKATI, ALAKSA

